UNITED STATES JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

------------------------------------------------------------

```
In Re:  Facebook, Inc.,        )   MDL No. 2843
Consumer Privacy User Profile  )
Litigation                     )   Chicago, Illinois
                               )   May 31, 2018
                               )   11:09 a.m.
                               )
```

------------------------------------------------------------

TRANSCRIPT OF ORAL ARGUMENT

Chair:              Honorable Sarah S. Vance
                    United States District Court
                    Eastern District of Louisiana

Members:            Honorable Marjorie O. Rendell
                    United States Court of Appeals
                    Third Circuit

                    Honorable Charles R. Breyer
                    United States District Court
                    Northern District of California

                    Honorable Ellen Segal Huvelle
                    (Recused)
                    United States District Court
                    District of District of Columbia

                    Honorable Lewis A. Kaplan
                    United States District Court
                    Southern District of New York

                    Honorable R. David Proctor
                    (Recused)
                    United States District Court
                    Northern District of Alabama

                    Honorable Catherine D. Perry
                    United States District Court
                    Eastern District of Missouri

Official Court Reporter:  Kathleen M. Fennell, RPR, RMR, FCRR
                          219 South Dearborn, Room 2524-A
                          Chicago, Illinois  60604
                          (312) 435-5569
                          Kathleen_Fennell@ilnd.uscourts.gov

<u>Oral Argument</u>:

| | |
|---|---|
| By: | Mr. Michael W. Sobol |
| | Lieff Cabraser Heimann & Bernstein, LLP |
| For: | Theresa Beiner, et al. |
| | |
| By: | Mr. W. Craft Hughes |
| | Hughes Ellzey, LLP |
| For: | Matthew Lodowski |
| | |
| By: | Mr. Robert F. Ruyak |
| | Ruyak Cherian LLP |
| For: | Ben Redmond, et al. |
| | |
| By: | Mr. Christopher A. Seeger |
| | Seeger Weiss LLP |
| For: | Jay Malskoff, et al. |
| | |
| By: | Mr. James C. Vlahakis |
| | Sulaiman Law Group Ltd. |
| For: | Victor James Comforte, II, et al. |
| | |
| By: | Mr. Jay Edelson |
| | Edelson PC |
| For: | People of the State of Illinois |
| | |
| By: | Mr. Orin Snyder |
| | Gibson, Dunn & Crutcher, LLP |
| For: | Facebook, Inc. |

1        (Proceedings heard in open court:)

2            JUDGE VANCE:   Next up No. 2843, In Re: Facebook,

3    Inc., Consumer Privacy User Profile Litigation.

4            MR. SOBOL:   Good morning.   Michael Sobol on behalf of

5    centralization in the Northern District of California on these

6    cases.

7            These cases primarily concern the conduct and

8    policies of the data-driven, targeted advertising company

9    known as Facebook, and -- which is headquartered in the

10   Northern District of California.

11           JUDGE RENDELL:   So we just need to figure out where,

12   and you say it should be there because that's where Facebook

13   is.

14           MR. SOBOL:   That's a reason.   That is where they're

15   headquartered.   The other defendants, and this is a point that

16   Facebook acknowledges, too, deploy Facebook's platform

17   pursuant to their business policies and business models; and,

18   therefore, as Facebook again acknowledges, the discovery of

19   even the foreign defendants will involve activity in the State

20   of California in the Northern District as well.

21           JUDGE VANCE:   There was some suggestion in one of the

22   briefs that Facebook already has the goods, I mean, the

23   evidence on the U.K. participants and the New York

24   participants.

25           Are you suggest -- do you subscribe to that

1   statement?

2        MR. SOBOL:  That's unknown to me, Your Honor.  What I

3   do know is that there was -- this is not something where

4   Facebook was not an active participant in recruiting app.

5   developers, like Cambridge Analytica, and was an active

6   participant in getting the business to the Northern District

7   of California, so we would expect that a lot of the

8   transaction, a lot of the activity that gave rise to the

9   conduct at issue is connected to the Northern District of

10   California.

11        There are some witnesses overseas, but, of course,

12   those witnesses overseas can be deposed --

13        JUDGE VANCE:  There's some in New York, too, though,

14   aren't there?

15        MR. SOBOL:  Yes.  There's some in New York.  They're

16   sort of the downstream, what I call downstream witness because

17   it's not the witnesses that would be percipient to the actual

18   breach of the privacy, the actual taking of the data.  It's

19   sort of the subsequent downstream use.

20        But, yes, there's a few witnesses in New York.

21        JUDGE VANCE:  They're sued as defendants, right?  I

22   mean, Cambridge Analytica is New York, right?  Or U.K. with a

23   big office in New York?

24        MR. SOBOL:  They do have an office in New York.  They

25   are a U.K. concern.  The only other United States defendant

1   that I'm aware in these cases is Mark Zuckerberg himself, of

2   course.

3          JUDGE VANCE:  What about the Mercers?

4          MR. SOBOL:  I'm sorry?

5          JUDGE VANCE:  Aren't there Mercers who are parties?

6          MR. SOBOL:  I believe they were identified as

7   witnesses in one of the submissions, Your Honor, and that's

8   the group from New York, which, you know, they can be deposed,

9   of course, in New York while the case proceeds in the Northern

10  District of California.

11         There's one aspect, since I already got the yellow

12  card, there's one aspect of our motion that I want to sort of

13  revisit with you a little bit, and we've asked to centralize a

14  couple of derivative cases that are also now pending in the

15  Northern District of California.

16         There's been -- it's true that there's a factual core

17  that overlaps, and it's also true that the discovery,

18  therefore, will overlap, and there's some efficiencies to be

19  gained by putting those together, and since 1407 doesn't

20  require an identity of interests for centralization, I think

21  it would be within your discretion to centralize those along

22  with it, but the development that has happened since my

23  paper --

24         JUDGE PROCTOR:  Why wouldn't we just handle that

25  through our normal CTO process?

1          MR. SOBOL:  It could be handled that way.  That's

2    where I was going, Your Honor, exactly right, and I think that

3    there was an effort to relate those cases in the Northern

4    District.  That motion was denied.  And so, really, what's at

11:13:28   5    core here, what's the most important interest is efficiency

6    and getting the discovery coordinated, and that can be

7    achieved simply by, I think, most -- best done by sending the

8    cases to the Northern District of California where the

9    derivative cases already are and, therefore, can be addressed

11:13:49  10    by the bench there.

11          JUDGE VANCE:  All right.  Thank you, sir.

12          MR. SOBOL:  Thank you.

13          JUDGE VANCE:  Next up is Mr. Hughes.

14          MR. HUGHES:  Good morning.  My name is Craft Hughes.

11:14:07  15    I'm counsel for plaintiff in the Texas action.

16          We filed one of the first-filed cases in this

17    litigation, and it's against not only Facebook, but as you

18    said previously, Cambridge Analytica.  Mercer has been named

19    as a defendant in New York, and then we have some defendants

11:14:31  20    in the U.K.

21          JUDGE VANCE:  All right.  Let me ask you this.

22    You're arguing that Judge Ellison is a great judge and would

23    do a superb job, and I truly agree with that, but what does

24    this case have to do with Houston?

11:14:44  25          MR. HUGHES:  Well, I believe this -- the claims in

1   this case are inherently nationwide, so centralization, the

2   term centralization I believe applies in this particular case,

3   and Houston is central --

4        (Laughter)

11:15:02

5        MR. HUGHES:  -- because the damages in this case --

6        JUDGE HUVELLE:  How are you defining the country?

7        MR. HUGHES:  -- the damages in this case span across

8   all 50 states and not just California.  Just because Facebook

9   has its headquarters in California doesn't mean that millions

11:15:16

10  of users --

11       JUDGE BREYER:  No, but the suggestion -- right, but

12  the suggestion is that maybe the witnesses are in California.

13  The witnesses don't appear to be in Houston.

14       MR. HUGHES:  Possibly --

11:15:28

15       JUDGE BREYER:  I mean, the plaintiffs, I understand

16  that, but as you acknowledge, plaintiffs are everywhere.

17       MR. HUGHES:  That's correct, Your Honor, and the

18  critical evidence in this case is going to be the data, the

19  personal data, and where it's stored --

11:15:42

20       JUDGE BREYER:  Personal data, is that the critical

21  evidence, or is the critical evidence what was Facebook's --

22  first of all, what are the contracts that Facebook had, what

23  are the procedures, what is their growth model, what is --

24  everything.

11:15:57

25       MR. HUGHES:  Those are also important issues, of

1  course.

2      JUDGE BREYER:  They seem to be.  They seem to be,

3  yeah.

4      MR. HUGHES:  The data storage facilities used by

5  Facebook, one of them is in Texas, and I don't believe

6  California has one.

7      JUDGE BREYER:  That's not going to testify, is it?

8  You're not going to call a facility and raise your right pier

9  and --

10      MR. HUGHES:  I realize it's an uphill battle trying

11  to convince the Panel to transfer this case to Texas.  I

12  realize that.

13      (Laughter)

14      JUDGE VANCE:  So thank you, sir.

15      (Laughter)

16      MR. HUGHES:  You never know unless you try though.

17      JUDGE VANCE:   No.  Thank you.

18      MR. HUGHES:  And I do believe that this case is a

19  nationwide issue, and just because California usually is at

20  the forefront of these privacy cases doesn't mean that we

21  should not get the chance to litigate in Texas.

22      JUDGE VANCE:  I don't disagree with you on the right

23  case.

24      Thank you, sir.

25      MR. HUGHES:  Thank you.

1          JUDGE VANCE:  Next up is Mr. Ruyak?

2          MR. RUYAK:  Yes, that's correct.

3          JUDGE VANCE:  And you are arguing for Delaware?

4          MR. RUYAK:  Yes, I am.

11:17:06   5          JUDGE VANCE:  Are you arguing we send this case to a

6  magistrate judge?

7          MR. RUYAK:  No, we also have another case -- there

8  are two cases in Delaware, one in front of Judge Andrews and

9  one in front of Magistrate Thynge, where a federal court judge

11:17:18  10  has not yet been appointed in that case.  We have moved to

11  consolidate those two cases in front of Judge Andrews at this

12  point.

13          JUDGE RENDELL:  Why Delaware?

14          MR. RUYAK:  Delaware --

11:17:30  15          JUDGE RENDELL:  I'm from Delaware.  Why Delaware?

16          MR. RUYAK:  Delaware is very important in this case

17  because there are actually nine entity defendants, only one of

18  which is Facebook, and there was a scheme created here to take

19  this data by the Cambridge Analytica and SCL entities.

11:17:46  20          Now, interestingly, there are four Cambridge

21  Analytics entities:  The holding company, the operating

22  company, Analytics commercial and Analytical political.

23          JUDGE RENDELL:  And you're going to tell me they're

24  incorporated in Delaware.

11:18:00  25          MR. RUYAK:  They're all incorporated in Delaware, and

1    they have offices in New York and DC and Delaware.

2            JUDGE PERRY:  How many of them have filed bankruptcy

3    of the Cambridge Analytica entities?

4            MR. RUYAK:  Only in one in London and one in the

5    U.S., and that's another reason why Delaware should be the

6    right spot for this.

7            JUDGE BREYER:  So what they did with the information

8    your argument is, look, what they did with the information is

9    they had all these relationships with these different

10   entities, and they did something with it, right?

11           MR. RUYAK:  Well, some of the damages will be related

12   specifically to that, Your Honor, yes.

13           JUDGE BREYER:  Sorry?

14           MR. RUYAK:  Not just that.  The Stored Communications

15   Act, which is our primary statute, has two sides to it.  One

16   is Facebook side, unauthorized provision of information.  The

17   other side is those who, unauthorized, took and stole the

18   information, which is the Cambridge Analytica and SCL

19   entities.  Six of the nine --

20           JUDGE BREYER:  The first part would be in California.

21           MR. RUYAK:  Pardon me, Your Honor?

22           JUDGE BREYER:  The first part would be in California.

23           MR. RUYAK:  Not necessarily in California.  There are

24   offices also in DC and New York for Facebook.

25           JUDGE BREYER:  Where the policies were made -- I

11:18:10

11:18:19

11:18:28

11:18:44

11:18:55

1    understand that -- where the contracts were drawn, where their

2    policies, where their business model generated, all in

3    California, isn't it?

4          MR. RUYAK:  Some of that is true.  However, that's

5    only half of what occurred here.

6          JUDGE BREYER:  Okay.  I got that.  I understand what

7    you're saying.  You're saying that the end use, the use of it,

8    is all over and, therefore, justifies A, B, C and D.  I

9    understand that.

10         MR. RUYAK:  The theft part of this case occurred from

11   companies that are in New York, Washington, D.C., Delaware and

12   in the U.K., and substantial discovery in this case is going

13   to have to take place in the U.K.

14         Also, our class is not just U.S. citizens.  It's also

15   U.K.  Our class is broader than the U.S. and includes --

16         JUDGE HUVELLE:  Is there going to be problems getting

17   jurisdiction over the, say, U.K. company in any place other

18   than where they're incorporated?

19         MR. RUYAK:  Yes.  We can get that, Your Honor.

20   That's true, but there's going to be some very important

21   issues of Delaware law here because of the incorporation, and

22   the Delaware courts I think can handle that better than other

23   courts.  For example --

24         JUDGE HUVELLE:  The question was will California have

25   trouble getting jurisdiction over, say, Cambridge Analytica?

11:19:05

11:19:17

11:19:33

11:19:46

11:20:01

1       MR. RUYAK:  I don't think we can get jurisdiction in

2   California over some of these entities that have never been

3   there.

4       JUDGE HUVELLE:  But you can in Delaware.

11:20:10    5       MR. RUYAK:  But we can get jurisdiction over all of

6   them in Delaware, the foreign entities and the domestic ones.

7       JUDGE KAPLAN:  Isn't Delaware a state that accepts

8   certified questions, not only from federal courts of appeals,

9   but from district courts?

11:20:20   10       MR. RUYAK:  Yes, Your Honor, but let me tell you what

11   the problem is here.  There's some recent developments that

12   have happened just recently.

13       One of them, Judge, some of these entities have filed

14   for bankruptcy, and a new entity has been now created by the

11:20:35   15   same shareholders.  We are going to be in Delaware under

16   Delaware law piercing the corporate veil, trying to find out

17   what kind of fraudulent scheme occurred here with this data.

18       JUDGE VANCE:  Well, I can tell you I have applied

19   Delaware law a lot of times, and it's not that hard.

11:20:51   20       MR. RUYAK:  No, no, Your Honor, I'm not

21   suggesting that.

22       JUDGE VANCE:  So I think it can be by somebody else

23   other than a Delaware Judge.

24       MR. RUYAK:  No, I'm not suggesting, I'm suggesting

11:20:59   25   that the courts there have dealt with Delaware corporate law a

1    lot, and I think since we can get jurisdiction over all of

2    these entities in Delaware, that's No. 1.

3           Secondly, it is central because we're talking about

4    discovery from the U.K. all the way across country, but a lot

11:21:14    5    of it in New York, Washington, we believe.  We found out that

6    once the bankruptcy was filed --

7           JUDGE VANCE:  I don't mean to interrupt, sir, but

8    you've been going way beyond your time, so thank you very

9    much.

11:21:24    10           MR. RUYAK:  Thank you, Your Honor.

11           JUDGE VANCE:  Next up, Mr. Seeger.

12           MR. SEEGER:  Good morning.

13           A number of the arguments I was going to make about

14    discovery I'm not going to do it.  It's all clear.  There's

11:21:38    15    some in the U.K., in New York, there were meetings in New

16    York.  I'll spend my time talking about Judge Esther Salas in

17    the District of New Jersey.

18           If the Panel looks at this -- there's no question

19    about the strong relationship between Facebook and California.

11:21:51    20    Judge Chhabria is an outstanding jurist, can handle the case,

21    no issue there.

22           If you look at this case, though, as being spread out

23    across the country and potentially into Europe and you're

24    looking for a more centrally located jurisdiction, I think New

11:22:03    25    Jersey is a great place.  Judge Salas had an MDL.  It was an

1  antitrust case that she disposed of just relatively recently.
2  She doesn't have one now.
3        JUDGE VANCE:  Is she in Newark?
4        MR. SEEGER:  She's in Newark, yes.
11:22:18  5        JUDGE VANCE:  Do you blame the parties for preferring
6  the Northern District of California?
7     (Laughter)
8        MR. SEEGER:  No.
9        JUDGE BREYER:  You know how to get to the Northern
10  District of California.
11        MR. SEEGER:  I do.  I've been there, Judge Breyer.
12        JUDGE BREYER:  Maybe if you take the Volkswagen,
13  you'd arrive --
14     (Laughter)
11:22:29  15        MR. SEEGER:  Absolutely, absolutely.
16        Yeah, no, there's no blame there at all.  But -- and,
17  you know, the mention of the bankruptcy, which is in New York,
18  I mean, New York would also be an outstanding jurisdiction for
19  it.
11:22:39  20        So thank you so much.
21        JUDGE VANCE:  Thank you, Mr. Seeger.
22        Next up is Mr. Vlahakis.
23        MR. VLAHAKIS:  Good morning.
24        I'd like to adopt some of the arguments that
11:23:03  25  Mr. Simon made with regard to the reason that Delaware could

1    be the right place, but the last time I checked, Chicago was

2    centrally located in this country.

3         (Laughter)

4         JUDGE VANCE:  We'll give it that.  We'll stipulate to

5    that.

6         MR. VLAHAKIS:  The issues that he mentioned are

7    important, that there are bankruptcy proceedings that have

8    been recently filed, and to really dig deeper into what

9    Cambridge Analytica had to do, there will be the need to delve

10   into bankruptcy proceedings in New York.  We are centrally

11   located.

12        The issue that the Court had mentioned, Judge Breyer,

13   I think about what happened with the data, there are two

14   issues to look at.  Yes, there were the contracts that may

15   have been formed that may have been exceeded by Cambridge, but

16   there's also the issue with how did this impact people

17   throughout the country, and what did Facebook do?

18        We know that Facebook claims that the data was

19   supposed to be deleted and it wasn't, but they took certain

20   actions that they availed themselves probably of the

21   jurisdiction of the U.K. by not appropriately maintaining this

22   data and following up when there were issues.

23        There were issues, as my complaint points out, in

24   Ireland, where Facebook was warned that their data privacy

25   policies were subject to this type of breach.

1    JUDGE RENDELL:  So where do you think this case
2  should go?

3    MR. VLAHAKIS:  Chicago, because I think it's
4  convenient for all the parties.  The attorneys could be on
11:24:20  5  this case as well.

6    JUDGE BREYER:  Or Ireland.

7    MR. VLAHAKIS:  Pardon?

8    JUDGE BREYER:  Or Ireland.

9    MR. VLAHAKIS:  Ireland's a nice place as well, Your
11:24:26  10  Honor.

11    JUDGE KAPLAN:  I understand that the geographical
12  center of the country is either Lebanon, Kansas or someplace
13  in South Dakota, depending on whether you count Alaska and
14  Hawaii.

11:24:37  15    Which of those districts do you prefer on the
16  centrally located theory?

17    MR. VLAHAKIS:  I prefer the weather in Chicago, Your
18  Honor, but all kidding aside --

19    JUDGE PROCTOR:  After yesterday, I'm not sure I would
20  say that.

21    (Laughter)

22    MR. VLAHAKIS:  That's why we're the Windy City.

23    I do understand your point, though, that there can be
24  a location to be central anyplace in the country, but I think
11:24:53  25  the gravity of this case, while it may be related to

1   Facebook's headquarters, what really happened, we still don't

2   know yet what Facebook knew when they knew it, and just

3   because they're headquartered there, those aren't going to be

4   the only witnesses here.

5   And if I may briefly, in terms of the siege that

6   Chicago is allegedly under.  They have less MDLs than the

7   Northern District of California.  We have 10.  California has

8   21.  We have less weighted cases per judges, despite us having

9   four vacancies.  We have 445 to 556 for California.

10   Our judges are very accomplished, can handle this.

11   Judge Bucklo does not have a pending MDL.  She had a

12   long-running one that she had before, and she's very well

13   suited for this.

14   JUDGE VANCE:  Thank you, sir.

15   MR. VLAHAKIS:  Thank you very much.

16   JUDGE VANCE:  Next up is Mr. Edelson for the

17   Government of Illinois.

18   MR. EDELSON:  Good morning, Your Honors.

19   We are the only government action here.  We are -- we

20   have no problem with there being an MDL in general with the

21   consumer class actions.  We think --

22   JUDGE BREYER:  Arguably, so many governments were

23   affected by this; isn't that correct?

24   MR. EDELSON:  Of course.  They may file suit.

25   JUDGE BREYER:  Then why shouldn't we have them in

1   every state where the government sues?

2       MR. EDELSON:  Well, I assume that those will stay in

3   state court, just like ours will as well.  So right now we

4   have a fully briefed remand issue.  We don't believe that

11:26:22

5   there's diversity jurisdiction.  We have no federal claims at

6   all.  It's in front of Judge Dow.  Judge Dow has already

7   rendered a decision on a very similar issue, and we expect

8   there to be a decision now.

9       So all that we're suggesting is let Judge Dow do his

11:26:39

10  work, and we think the case will be remanded to Cook County

11  where it belongs.

12      JUDGE BREYER:  Has it been argued?  Sorry, I didn't

13  hear that.  Has your motion to remand been argued?

14      MR. EDELSON:  It's fully briefed, and I do not

11:26:51

15  believe there will be oral argument.  I think he's going to

16  rule on the papers.

17      JUDGE VANCE:  All right.  Thank you, sir.

18      MR. EDELSON:  Thank you.

19      JUDGE VANCE:  And next up is Mr. Snyder.

11:27:10

20      MR. SNYDER:  Good afternoon, Your Honors.

21      Judge Vance, I'm glad you made the New Jersey joke

22  because I was going to make one, but --

23      JUDGE VANCE:  You can trust me to be nasty first.

24      (Laughter)

11:27:26

25      JUDGE VANCE:  I'm just kidding.

1          MR. SNYDER:  Facebook agrees with the supermajority

2     of plaintiffs, 20 out of 29 that the Northern District is the

3     appropriate forum, not just because Facebook's headquartered

4     there -- of course, it is -- but because it truly is, as Judge

11:27:42   5     Breyer said, the center of gravity for the key allegations in

6     the case relating to the critical fact issues as alleged by

7     the plaintiffs.

8          JUDGE RENDELL:  How many people does Facebook employ

9     in the Northern District of California?

11:27:57   10          MR. SNYDER:  Tens of thousands.

11          JUDGE RENDELL:  Thousands.

12          MR. SNYDER:  Tens of thousands.

13          JUDGE RENDELL:  Tens of thousands.

14          MR. SNYDER:  Yeah.  I don't have a precise number.

11:28:01   15          JUDGE VANCE:  Is there not going to be significant

16     discovery in the U.K. and in New York, or on the East Coast?

17          MR. SNYDER:  New York, not really.  I think one of

18     the counsel described them as secondary or tertiary parties.

19     They were not involved in any of the operative facts to our

11:28:16   20     knowledge.

21          I think Mr. Mercer is a defendant in one case.  I

22     believe that Mr. Bannon is a defendant in one case.  I'm not

23     sure either has been served, but the key actors were in Menlo

24     Park, Northern California, and the U.K.

11:28:32   25          The key actors at Facebook, as Judge Breyer

1    indicated, involve the building of the platform, what the

2    physical attributes of the Facebook platform are, the Facebook

3    contracts with both users and third-party app. developers,

4    Facebook policies, terms of use that governed the use of data,

11:28:52    5    and in this case where there was a misuse of data by Alexander

6    Kogan and Cambridge Analytica.

7            Key allegations in all of the complaints, all 29, are

8    what Facebook knew and when it knew it.  And that, about the

9    misuse, starting in 2000 and -- in some instances, there will

11:29:13    10    be allegations dating back to 2012, '13 and '14 and '15, so

11    not only use contemporaneous with -- knowledge contemporaneous

12    with the alleged misuse, but also Facebook's response in 2016

13    and 2017.

14            And while a number of the witnesses will be current

11:29:29    15    Facebook employees within our control, some of the allegations

16    date back years, and there will be former employees and,

17    therefore, nonparties, and I can't assure this Court that we

18    will have control over them, and it would be, I think,

19    convenient for all of us to have them within the subpoena

11:29:46    20    power.

21            JUDGE RENDELL:  If not in the Northern District of

22    California, then where?

23            MR. SNYDER:  I mean, the only remotely convenient

24    place is a one-hour plane ride south, in the Central District,

11:29:56    25    I would think.  So --

1       JUDGE VANCE:  Are there other app. developers who are

2  likely to be involved in this?

3       MR. SNYDER:  There may be other app. developers, and

4  they're dispersed around the world.  There's some in Toronto.

11:30:13     5  There's some in remote states.  There's no center of gravity

6  for the other app. developers.

7       JUDGE VANCE:  Another question.  You argue about the

8  derivative actions.

9       MR. SNYDER:  Yes.

11:30:23    10       JUDGE VANCE:  Don't the derivative plaintiffs have to

11  show that Facebook messed up?

12       MR. SNYDER:  Well, as an initial matter, I mean,

13  they're distinct claims.  They're claims on behalf of

14  Facebook, on behalf of the officers and directors -- against

11:30:38    15  the officers and directors.  That's the very nature of a

16  derivative action, as Judge Kaplan taught me in 1986, if I

17  recall, and in a consumer case, they assert claims against

18  Facebook on behalf of Facebook users.

19       JUDGE VANCE:  No, I know the difference between a

11:30:55    20  derivative suit and a consumer suit, but I'm asking the

21  conduct at issue is Facebook's conduct, right, in improperly

22  letting its data be misused, right?

23       MR. SNYDER:  Ultimately, I would submit that Judge

24  Gilliam, who has the six or five derivative cases, will never

11:31:12    25  reach the merits because they first have to demonstrate demand

1   futility, they have to go through the independence of the
2   directors, and they're going to fail on all counts.

3          So those are very, I think, discrete both factual and
4   legal issues that should not be consolidated and centralized
5   with what will be very different questions, frankly.

11:31:28

6          JUDGE KAPLAN:   Look, granting all of the preliminary
7   issues that a plaintiff has to get by to proceed on the merits
8   of the derivative action, the fact remains that if any of the
9   plaintiffs jump all those hurdles, at core is a common set of
10  facts with all the other cases, although measured by different
11  legal standards.

11:31:47

12         MR. SNYDER:   Agreed.   I agree with that.   If they get
13  to the ultimate merits, the ultimate merits all are bundled in
14  the same common nucleus effect.

15         And, finally, are there any other issues?

11:32:00

16         For Mr. Edelson and his Chicago Cook County case, you
17  know, this Court, I think one of the judges indicated this
18  court routinely consolidates state enforcement actions, and
19  the allegations in the Cook County case are virtually
20  identical to all 29 other cases, and so what I would
21  respectfully suggest is that the Chicago case be part of the
22  MDL conditional order, and then if the Court remands it, then
23  it's outside.   If the Court doesn't remand, then it comes
24  along with the kit and caboodle to wherever we are, hopefully
25  not Houston.

11:32:19

11:32:40

1          JUDGE VANCE:  All right.  Thank you, sir.

2          MR. SNYDER:  Thank you.

3       (Proceedings concluded at 11:32 a.m.)

4                      CERTIFICATE

5       I certify that the foregoing is a correct transcript from

6   the record of proceedings in the above-entitled matter.

7   */s/Kathleen M. Fennell*              *June 11, 2018*

8   _____        _____
    Kathleen M. Fennell                 Date
9   Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25